UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-80867-CIV-MAYNARD

JULIO ALBERTO LOZADA,

    Plaintiff,

v.

KILOLO KIJAKAZI, Acting Commissioner
of the Social Security Administration

    Defendant.
_____/

## ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT (DE 17 & DE 18)

Plaintiff Julio Alberto Lozada brings this action under the Social Security Act seeking judicial review of Defendant's final decision denying his applications for disability benefits. Plaintiff timely exhausted his administrative remedies, and Defendant's decision is ripe for judicial review under 42 U.S.C. §§ 405(g), 1383(c)(3). The parties have consented to U.S. Magistrate Judge jurisdiction. DE 14; DE 15.

After Defendant filed the certified administrative record, DE 12 (cited herein as "R. __"), Plaintiff filed his Motion for Summary Judgment. DE 17. Defendant responded with a Motion for Summary Judgment, DE 18, and Plaintiff replied, DE 19. Having carefully considered the entire record, the parties' briefing, and oral argument of counsel before me on April 27, 2023, Plaintiff's Motion for Summary Judgment, DE 17, is **GRANTED** and Defendant's Motion for Summary Judgment, DE 18, is **DENIED** for the reasons set forth below.

## BACKGROUND

On May 25, 2018, Plaintiff applied for disability insurance benefits, alleging a disability onset date of May 6, 2018. R. 346-56. Plaintiff was fifty-one years old on his application date.

R. 15, 346. He has a sixth-grade education and past relevant work experience as a carpenter. R. 394. Plaintiff alleged that he became unable to work due to hearing voices, lumbar ruptured disc, heart problems, and mental illness. R. 346-56, 393, 430-31.

Plaintiff's application was denied initially and on reconsideration. R. 151-55, 173-80. On July 21, 2020, Administrative Law Judge ("ALJ") James Andres held a hearing at which Plaintiff, Plaintiff's counsel, a Spanish interpreter, and a vocational expert appeared. R. 64-86. Plaintiff and the vocational expert testified at this first hearing. On May 12, 2021, ALJ Andres held a supplemental hearing at which Plaintiff, Plaintiff's successive counsel, a Spanish interpreter, a new vocational expert, and a medical expert (psychologist Dr. Michael Lace) appeared. R. 43-63, 1680-84. Dr. Lace, Plaintiff, and the new vocational expert testified at this second hearing.

On September 14, 2021, ALJ Andres issued a decision finding Plaintiff not disabled. R. 21-34. On April 6, 2022, the Appeals Council denied Plaintiff's request for review of the ALJ's decision. R. 1-3. This timely appeal followed.

## STANDARD OF REVIEW

To qualify for Social Security benefits, a claimant must show that he is disabled. *Ellison v. Barnhart,* 355 F.3d 1272, 1276 (11th Cir. 2003); *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001); 20 C.F.R. §§ 404.1512(a), 416.912(a). The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment" is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D).

A disability benefits claim follows a multi-layered process before it can be reviewed in federal court. A claimant first applies to a state agency for disability determinations, 42 U.S.C. § 421(a), after which the claimant is entitled to an evidentiary hearing before an ALJ. *Heckler v. Day*, 467 U.S. 104, 106–07 (1984). An ALJ must perform a "five-step sequential evaluation" to determine if a claimant is disabled. 20 C.F.R. § 404.1520(a)(1). This five-step process determines if a claimant (1) is currently employed; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or equals an impairment listed in 20 C.F.R. pt. 404, subpt. P, app. 1 (the "Listings"); (4) can perform past relevant work based on a residual functional capacity ("RFC") assessment; and (5) retains the ability to perform any work in the national economy. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011); *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant has the burden of proof through step four and then the burden shifts to the Commissioner at step five. *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018); *Hines–Sharp v. Comm'r of Soc. Sec.*, 511 Fed. Appx. 913, 915 n.2 (11th Cir. 2013). If an individual is found disabled or not disabled at any step, further inquiry is unnecessary. 20 C.F.R. § 416.920(a).

A claimant may appeal an ALJ's unfavorable decision to an Appeals Council that must review the case and determine if the ALJ's "action, findings, or conclusion is contrary to the weight of the evidence currently of record." *Heckler*, 467 U.S. at 106-07; 20 C.F.R. § 404.970(a). After completing the foregoing administrative process, a claimant may seek review in federal court. 42 U.S.C. § 405(g); *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1261 (11th Cir. 2007).

Under governing regulations, the Social Security Administration conducts its "administrative review process in an informal, non-adversarial manner." 20 C.F.R. § 404.900(b). Unlike judicial proceedings, social security administrative hearings "are inquisitorial rather than

adversarial." *Washington*, 906 F.3d at 1364 (quoting *Sims v. Apfel*, 530 U.S. 103, 111 (2000)). "Because Social Security hearings basically are inquisitorial in nature, '[i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits.'" *Id.* Indeed, "at the hearing stage, the Commissioner does not have a representative that appears 'before the ALJ to oppose the claim for benefits.'" *Id.* (quoting *Crawford & Co. v. Apfel*, 235 F.3d 1298, 1304 (11th Cir. 2000)). "Thus, 'the ALJ has a basic duty to develop a full and fair record. This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.'" *Id.* (quoting *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015)).

On review in federal court, the scope of review is limited to determining if (1) substantial evidence supports the Commissioner's findings, and (2) the correct legal standards were applied. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). To make this determination, a reviewing court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). It is more than a mere scintilla but less than a preponderance. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The Supreme Court has explained that "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154.

In testing for substantial evidence, a court may not "reweigh the evidence" or "decide the facts anew." *Winschel*, 631 F.3d at 1178. Instead, so long as the ALJ's findings are supported by substantial evidence, they are conclusive, and the court must defer to the ALJ's decision even if

the evidence preponderates against it.  *Crawford*, 363 F.3d at 1158-59; *see also Biestek*, 139 S. Ct. at 1157 (the governing standard of review defers to the presiding ALJ, "who has seen the hearing up close").  However, the court will not "merely rubber-stamp a decision ... [and] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence."  *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1257 (11th Cir. 2019); *see also Simon v. Comm'r, Soc. Sec. Admin.*, 7 F.4th 1094, 1104 (11th Cir. 2021) ("Within this narrowly limited role, however, the federal courts 'do not act as automatons' … '[w]e retain an important duty to 'scrutinize the record as a whole' and determine whether the agency's decision was reasonable") (quoting *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986)).  Remand is appropriate for further factual development where the record reveals evidentiary gaps that result in unfairness or clear prejudice.  *Washington*, 906 F.3d at 1358.

A reviewing court must also review the ALJ's decision to determine if the correct legal standards were applied.  *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997).  If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide sufficient reasoning for determining that the proper legal analysis has been conducted, then the ALJ's decision must be reversed.  *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## **THE ALJ'S DECISION**

The ALJ in this case proceeded through the five-step sequential analysis as follows:

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged disability onset date of May 6, 2018.  R. 24.

At step two, the ALJ found that Plaintiff had the following severe impairments: low back pain, obesity, depression, history of coronary artery disease, and hypertension.  *Id.*

At step three, notwithstanding the noted impairments, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an agency-listed impairment in the Listings. *Id.* The ALJ then concluded that Plaintiff retained the RFC to perform heavy work as defined in 20 CFR 404.1567(d) and 416.967(d) except with the following limitations:

> sit for seven hours, stand for eight hours, and walk for seven hours in an eight-hour day. Further, he cannot perform fast-paced production work.

*Id.* In formulating this RFC, the ALJ considered Plaintiff's subjective complaints and determined that, while the evidence established the presence of medically determinable impairments that could reasonably be expected to cause the alleged symptoms, Plaintiff's statements as to the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence in the record. R. 24-27. In support of this finding, the ALJ cited and discussed medical records, treatment notes, and the opinions of various medical providers and consultants. R. 24-31.

At step four, considering Plaintiff's RFC and based on vocational expert testimony, the ALJ found that Plaintiff could perform his past relevant work as a carpenter (DOT 860.381-022, medium, SVP 7). R. 32. The ALJ further found that Plaintiff could perform other available work in the national economy such as the representative occupations of industrial cleaner (DOT 381.687-018, medium, SVP 2), housekeeper, medical (DOT 323.687-014, medium, SVP 2), and hand packager (DOT 920.687-018, medium, SVP 2). R. 32-33.

The ALJ therefore concluded that Plaintiff had not been disabled within the meaning of the Social Security Act during the relevant period of May 6, 2018, through the date of the ALJ's decision on September 14, 2021. R. 33.

**DISCUSSION**

Plaintiff contends that the ALJ's decision is not supported by substantial evidence, and that the ALJ failed to properly evaluate the medical opinions of Plaintiff's treating physician, Dr. Rafael Baez, and Plaintiff's mental health provider, Physician Assistant ("PA") Shamarukh Kabir. Upon review, I agree that the ALJ's RFC determination that Plaintiff can perform work at the heavy exertional level is unsupported by substantial evidence in the record. I thus find remand appropriate.

The RFC is a "medical assessment of what the claimant can do in a work setting despite any mental, physical, or environmental limitations caused by the claimant's impairments or related symptoms." *Luterman v. Comm'r of Soc. Sec.*, 518 F. App'x 683, 689 (11th Cir. 2013); *see also Mills v. Berryhill*, 824 F. App'x 894, 899 (11th Cir. 2020); *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). It is strictly the ALJ's duty to determine the claimant's RFC. *See Denomme v. Comm'r, Soc. Sec. Admin.*, 518 F. App'x 875, 877–78 (11th Cir. 2013). The ALJ must consider the claimant's impairments, both severe and non-severe, and all evidence of record. *Phillips*, 357 F.3d at 1238; *see Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010).

In formulating the RFC, the ALJ need not refer to every piece of evidence, provided that the ALJ provides sufficient reasoning for the reviewing court to evaluate whether the ALJ considered the claimant's medical condition as a whole. *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1326 (11th Cir. 2021) ("So long as the ALJ's decision demonstrates to the reviewing court that it considered the claimant's medical condition as a whole, the ALJ is not required to cite every piece of evidence in the record."). Under Social Security Ruling 96-8p, the RFC assessment must first "identify the individual's functional limitations or restrictions and assess his or her work-related activities on a function-by-function basis" before expressing the

RFC "in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." Soc. Sec. Admin., *Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims*, SSR 96-8p, at *1 (July 2, 1996), 1996 WL 374184.

Here, the ALJ concluded that Plaintiff has the RFC to perform heavy work, with some limitations. R. 26-32. Plaintiff argues that this RFC determination is not substantially supported because the ALJ "cherry picked select unremarkable findings from the medical record while ignoring much of the objective evidence." DE 17 at 13. I agree with Plaintiff's contention.

The ALJ was persuaded that Plaintiff can perform heavy work based on the opinion of a consultative one-time examiner, Dr. Daniel Nader Daria. Dr. Daria evaluated Plaintiff on December 3, 2020 and indicated in a Medical Source Statement that Plaintiff could perform heavy work, including that he could continuously lift 51-100 pounds, continuously carry 51-100 pounds, sit/stand for 7 hours at one time without interruption, walk for 8 hours at one time without interruption, and continuously climb stairs, ladders, ramps, or scaffolds. R. 1669-74. Dr. Daria's corresponding report does not specify which medical records he reviewed, but Dr. Daria's conclusions appear to be based on his physical examination of Plaintiff and reported findings that Plaintiff was in no acute distress, alert, and with normal motor strength and gait. R. 1678-79.

In evaluating Dr. Daria's opinion, the ALJ stated:

> As for opinion evidence, the consultative examiner opined the claimant could perform a range of heavy work (Exhibit 32F). The undersigned finds this opinion persuasive because it is supported by the record. Specifically, the record shows normal strength and sensation on several instances (Exhibit 5F/Page 2, 5, 8-9, 13-14, 18, 22, 27, 31, 35, 39, 45, 51; Exhibit 9F/Page 2; Exhibit 13F/Page 10, 14, 19, 27, 33, 38, 43, 51, 56, 61, 66; Exhibit 14F/Page 3, 7, 11, 15, 19, 26, 30, 34; Exhibit 17F/Page 4; Exhibit 30F/Page 29, 34, 39, 44, 48, 53, 58, 63, 67; Exhibit 32F). The primary care physician and consultative examiner noted a normal gait (Exhibit 13F/Page 10, 14, 19, 27, 33, 38, 43, 51, 56, 61, 66; Exhibit 15F/Page 61, 70; Exhibit 30F/Page 29, 34, 39, 44, 48, 53, 58, 63, 67; Exhibit 32F). Cardiovascular examinations were within normal limits (Exhibit 7F/Page 5; Exhibit 8F; Exhibit 17F/Page 13; Exhibit 23F; Exhibit 32F). A chest x-ray was unremarkable and an

> ECG was normal (Exhibit 7F/Page 27). The cardiologist indicated the claimant's coronary artery disease and hypertension were stable (Exhibit 23F/Page 7). Moreover, this opinion was based on direct examination of the claimant and rendered in his field of expertise.

DE 12 at 36.

In concluding—as Dr. Daria did—that Plaintiff can perform heavy work, however, the ALJ failed to address significant contradictory medical evidence in the record and explain how such contradictory evidence nonetheless supports a finding that Plaintiff can perform heavy work. For instance, the ALJ failed to meaningfully analyze Plaintiff's treatment history relating to his back pain—a central portion of Plaintiff's disability allegations. The ALJ relies on normal findings during some of Plaintiff's medical exams, but Plaintiff's medical records reflect that he reported severe back pain for several years and received epidural injections for his back pain before and after his disability onset date, including on September 30, 2016, October 13, 2016, November 18, 2016, March 22, 2017, December 10, 2018, and December 12, 2019. R. 584, 593 616, 645, 673, 1108-09, 1501. The records suggest that the epidural injections failed to provide long-term pain relief and Plaintiff additionally utilized oral medication for pain relief, including cyclobenzaprine, gabapentin, methylprednisone, hydrocodone, tramadol, and oxycodone. R. 627, 1394, 1463, 1658-62. Additionally, Plaintiff's August 2, 2016 MRI showed ligamentum flavum hypertrophy, bilateral facet joint arthropathy, and asymmetric disc bulges causing severe bilateral neuroforaminal stenosis. R. 620-21. And Plaintiff's August 15, 2019 MRI showed findings suggestive of spondylolysis, severe biforaminal stenosis and nerve root compression, and facet joint fluid which may represent inflammation, irritation, or synovitis. R. 1246-47.

Moreover, despite the ALJ's finding that the record shows no strength or sensory deficits and generally normal gait, Plaintiff's medical records reflect instances where Plaintiff was found to have deficits in these areas. For instance, Plaintiff's medical records from his examinations by

Dr. Alejandro Tapia as part of Plaintiff's back pain treatment in 2016 and 2017 indicate Plaintiff frequently had paraspinals tenderness, muscle spasms, "limited" range of motion in the lumbar spine region, and SI joint and axial back pain. R. 627, 630, 673, 1246-47. In 2018, although Plaintiff exhibited normal gait, strength, and sensation at some of his doctor visits, at other visits he displayed an abnormal gait and more limited range of motion, consistent with his complaint that his back pain occurred "on and off." R. 1057. At an appointment with Dr. Baez on October 15, 2018, Dr. Baez noted on examination that Plaintiff had tenderness at the lumbar spine, decreased flexion, decreased extension, decreased lateral bending, and decreased rotation. R. 1059. Dr. Baez made the same observation upon examining Plaintiff on November 15, 2018. R. 1069.

Dr. Baez' office largely left treatment of Plaintiff's back condition to pain management specialists at Certified Spine & Pain Care, where Plaintiff saw Dr. Edwin Maldonado. On July 23, 2018, Plaintiff went to Dr. Maldonado complaining of severe 7 out of 10 pain, which was a constant dull ache radiating bilaterally into his legs, and ambulating with a cane. R. 1087-90. Upon examination, Dr. Maldonado noted that Plaintiff exhibited low back tenderness on palpitation, moderate muscle spasms of the paralumbar bilaterally, a positive left straight leg raise, and limited range of motion, including flexion 40/60, extension 10/25, right rotation/left rotation 10/25, "with pain in all of the planes." *Id*. Dr. Maldonado prescribed pain medicines and recommended further steroid injections once Plaintiff's cardiologist allowed him to stop taking Plavix. *Id*. Plaintiff continued to see Dr. Maldonado monthly from July 2018 to January 2019 with largely the same findings. On December 10, 2018, Plaintiff received lumbar epidural steroid injections from Dr. Maldonado. R. 1107-09. He reported experiencing 50% relief for four weeks,

but he still ambulated with a cane and Dr. Maldonado's medical findings at Plaintiff's monthly examinations showed no significant improvement. R. 1087-1118.

In 2019, Plaintiff sought additional back pain treatment and was evaluated by PA-C Megan Lucas of Dr. Friedman's office, who found that Plaintiff had 4+/5 hip flexor strength, 4-/5 ankle dorsiflexors strength, 4-/5 long to extensors strength, and 4/5 ankle plantar flexors strength. R. 1474. Subsequent findings of mildly abnormal motor strength and limited range of motion were reported on November 5, 2019, December 12, 2019, February 3, 2020, and March 2, 2020. R. 1489, 1499, 1644, 1652. It was additionally noted during these examinations in late 2019 through early 2020 that Plaintiff had abnormal sensation, abnormal monofilament test results,[1] abnormal DTRs,[2] and hypoesthesia[3] affecting Plaintiff's left leg. R. 1474, 1489, 1499, 1644, 1651. While perhaps not indicative of extreme strength deficits, PA Lucas' objective findings also do not square with the ALJ's indication of Plaintiff having no strength deficits whatsoever.

And, while the ALJ noted that "[m]any records document a normal gait," the record also reflects that Plaintiff had an abnormal gait at various medical exams. For example, on April 6, 2017, Dr. Tapia noted that Plaintiff had a "Slow, Stiff Gait" that was "forward flexed." R. 646. And on May 11, 2017, June 8, 2017, and July 6, 2017, Dr. Tapia similarly noted that Plaintiff had a slow, stiff gait. R. 633, 638, 642. Plaintiff was sometimes noted using a cane throughout 2018.

---

[1] A monofilament test "is done to test for nerve damage" by "check[ing] for loss of feeling on [the] foot." *See* https://medlineplus.gov/ency/imagepages/19960 htm#:~:text=A%20monofilament%20test%20is%20done,of%20feeling%20on%20your%20foot (last visited September 12, 2023).

[2] Deep tendon reflexes "aid in evaluating neurologic disease affecting afferent nerves, spinal cord synaptic connections, motor nerves, and descending motor pathways." *See* https://www.ncbi.nlm.nih.gov/books/NBK562238/#:~:text=%5B1%5D%20Deep%20tendon%20reflexes%20or,nerves%2C%20and%20descending%20motor%20pathways (last visited September 12, 2023).

[3] Hypoesthesia is "[a]n abnormality of the primary sensation that is mediated by peripheral nerves (pain, temperature, touch, vibration, joint position)." *See* https://www ncbi.nlm.nih.gov/medgen/6974 (last visited September 12, 2023).

R. 1087-1121. More recently, Plaintiff was noted as exhibiting an antalgic gait with slow cadence and unsteady balance during in person evaluations on October 22, 2019, November 5, 2019, December 12, 2019, February 3, 2020, and March 2, 2020. R. 1474, 1489, 1499, 1644, 1651.

Notably, of the four medical professionals who rendered opinions regarding Plaintiff's physical limitations, only one – Dr. Daria – concluded that Plaintiff could perform heavy work. Dr. Baez (Plaintiff's treating physician) concluded that Plaintiff was unable to perform even sedentary work, and the two State agency medical consultants (who reviewed Plaintiff's longitudinal medical record) opined that Plaintiff was limited to light work. The ALJ rejected these opinions in favor of a heavy work finding with repeated statements that the record noted no strength or sensory deficits, and documented a normal gait, normal cardiovascular findings, and stable hypertension. As stated above, however, this summary ignores significant objective findings from Plaintiff's history of treatment for back pain, including but not limited to imaging records and multiple examinations showing abnormal, unsteady gait, limited range of motion, and strength deficits.

The ALJ retains a basic duty to develop a full and fair record. *Pennington v. Comm'r of Soc. Sec.*, 652 F. App'x 862, 871 (11th Cir. 2016). While a reviewing court may not "reweigh the evidence" or "decide the facts anew," *Winschel*, 631 F.3d at 1178, an ALJ "is obligated to consider all relevant medical evidence and may not cherry-pick facts to support a finding of non-disability while ignoring evidence that points to a disability finding." *Dicks v. Colvin*, 2016 WL 4927637, at *4 (M.D. Fla. Sept. 16, 2016) (citation and quotation omitted). There can be a fine line between evaluating the decision for cherry-picking and reweighing the evidence. In this case, however, the decision does not reflect that the ALJ considered all of the medical evidence discussed above in

reaching the conclusion that Plaintiff can perform heavy work.[4] The regulations define "heavy" work as involving "lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds." 20 C.F.R. § 404.1567. In this case, spinal imaging, lumbar injection records, and other available medical evidence pertaining to Plaintiff presents objective evidence of severe chronic back pain that could reasonably produce greater RFC limitations than those assessed by the ALJ. As the ALJ based his criticism of the medical professionals who limited Plaintiff to reduced ranges of sedentary and light work largely on an asserted lack of supporting objective evidence in the record, the ALJ's failure to meaningfully address the contradictory evidence is significant. Remand is therefore warranted on the basis that the RFC finding is unsupported by substantial evidence.

Because I find that this case must be remanded for further proceedings that may result in another administrative hearing and could impact the ALJ's assessment of Plaintiff's RFC, I find it unnecessary to address Plaintiff's other arguments, including whether the ALJ properly considered Plaintiff's mental limitations in making the RFC determination. *See Demench v. Sec'y of Dep't of Health & Human Servs.*, 913 F.2d 882, 884 (11th Cir. 1990) (declining to address plaintiff's remaining arguments due to conclusions reached in remanding the case); *Jackson v. Bowen*, 801 F.2d 1291, 1294 n. 2 (11th Cir. 1986) (finding it unnecessary to address most of the issues raised by the plaintiff because they were likely to be reconsidered on remand); *Decaro v. Acting Comm'r of Social Security Admin.*, 2017 WL 1130746, at *6 (M.D. Fla. March 27, 2017) (declining to

---

[4] While the ALJ notes that he "did not provide articulation about the evidence that is inherently neither valuable nor persuasive to the issue of whether the claimant is disabled in accordance with 20 CFR 404.1520b and 416.920b," DE 12 at 38, these regulations do not absolve the ALJ of his responsibility to consider all relevant medical evidence. 20 C.F.R. § 404.1520b(c) provides in pertinent part that an ALJ need not provide an analysis of how the ALJ considered (1) "[d]ecisions by other governmental agencies and nongovernmental entities"; (2) "[d]isability examiner findings; and (3) [s]tatements on issues reserved to the Commissioner." It does not relieve an ALJ of the obligation to provide an analysis of the medical evidence relevant to an RFC determination.

address claimant's remaining arguments on appeal where remand on RFC issue might result in change in RFC). However, consistent with its obligations on remand, the Commissioner is directed to reconsider all evidence in rendering a decision.

## CONCLUSION

Upon review of the entire record, I find that substantial evidence does not support the ALJ's RFC determination and Plaintiff was prejudiced thereby. It is thus **ORDERED AND ADJUDGED** that:

1. Plaintiff's Motion for Summary Judgment (DE 17) is **GRANTED**.

2. Defendant's Motion to Summary Judgment (DE 18) is **DENIED.**

3. Defendant's administrative decision is **VACATED AND REMANDED** to the Commissioner of Social Security pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner is instructed to conduct such further proceedings as are necessary to issue a new decision based on substantial evidence and proper legal standards.

4. I will separately enter a final judgment in accordance with Federal Rule of Civil Procedure 58.

**DONE AND ORDERED** in Chambers at Fort Pierce, Florida, this 14th day of September, 2023.

SHANIEK MILLS MAYNARD
U.S. MAGISTRATE JUDGE